Wade V. LEWIS, Sr., and Elkhorn Mining Company, a Montana corporation, Plaintiffs,

v.

READER'S DIGEST ASSOCIATION, INC., a corporation, and The Hearst Corporation, a corporation, Defendants.

Civ. No. 2033.

United States District Court,
D. Montana,
Butte Division.

Nov. 5, 1973.

John F. Bell, Bolkovatz, Romine & Bell, Helena, Mont., for plaintiffs.

Peter C. Pauly, Loble, Picotte, Loble, Pauly & Sternhagen, Helena, Mont. for defendant The Hearst Corp.

Ronald F. Waterman, Gough, Booth, Shanahan & Johnson, Helena, Mont., for defendant Reader's Digest Assn.

## MEMORANDUM OPINION AND ORDER

BATTIN, District Judge.

This is an action in libel commenced in this court upon removal from the Fifth Judicial District of the State of Montana. The defendants, The Hearst Corporation and Reader's Digest Association, have both combined motions to dismiss for lack of jurisdiction, to quash service of process, and to dismiss for failure to state a claim upon which relief can be granted. Upon stipulation between the parties, all of the defendants' motions made pursuant to Rule 12 and Rule 56 of the Federal Rules of Civil Procedure, are submitted to the court upon briefs and other supporting documents.

Plaintiffs operate a health mine which some assert to be a cure for sufferers of arthritis and other diseases. In the August 1969 issue of Good Housekeeping, a publication of defendant Hearst Corporation, an article was printed entitled: "What You Should Know About Arthritis Quacks". The article contained the following paragraph:

"Promoters of quack 'cures' have become unspeakably bold. In Boulder, Montana, there is an abandoned uranium mine whose glowing advertisements lure thousands each year to soak up radon, a radioactive gas, in hopes of relieving their pain. The AMA has called this type of treatment not only useless, but potentially dangerous. Nevertheless, when news accounts reported that the famous heart-transplant pioneer, Dr. Christiaan Barnard, had arthritis in his hands, the mine owner actually sent him a brochure and invited him to take the cure!"

The January 1970 issue of defendant Reader's Digest magazine contained a condensed version of the Good Housekeeping article. The third paragraph of that version was identical to the paragraph set forth above. Plaintiffs allege that the article contained false, willfully

malicious, and unprivileged language relating to plaintiffs and the operation of the health mine and further that the defendants were aware that this information was false and recklessly disregarded this knowledge. Finally, plaintiffs allege that they attempted without success to have both Reader's Digest and Hearst Corporation publish a retraction.

This court, on June 16, 1972, issued a memorandum opinion and order dispensing in part with the jurisdictional question. The Montana Supreme Court, on certification by this court, issued a declaratory judgment, adopting the multi-publication rule. As the result of the Montana Supreme Court ruling, it is the opinion of this court that the cause of action arose upon the arrival and sale of defendants' periodicals in Montana. Thus, the cause of action is "one which arises out of, or results from the activities of the defendant within the forum . . . ." Brecht v. RMA-BRJ, 24 St.Rptr.761, 763 (D.Mont., 1967). This fulfills the second requirement of the test set forth in the Brecht decision thoroughly discussed in this court's June 16, 1972, memorandum opinion and order. Consequently, this court does have jurisdiction over the defendants.

The court now turns its attention to the defendants' motion to dismiss for failure to state a claim upon which relief can be granted. The defendants' contentions are two-fold: (1) that plaintiffs made no adequate demand for retraction of the allegedly libelous statements as required by statute; and (2) the statements were privileged under the circumstances in that there is immunity under the First Amendment to the Federal Constitution. As to the first contention, the court feels upon review of the materials that the plaintiff made an adequate demand for retraction. It is unnecessary to belabor this point further. As to the second contention, the court is inclined to believe that the defendants' statements were privileged under the immunity given by the First Amendment of the Federal Constitution.

In New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court, in considering limitations imposed on state libel laws by the Constitutional guarantees of the First Amendment, said:

"The constitutional guarantees require, . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 279–280, 84 S.Ct. 726.

In the 1967 decision Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, the New York Times rule was extended from public figures to private citizens who had thrust themselves into important public controversies.

The Ninth Circuit, in United Medical Laboratories, Inc., v. Columbia Broadcasting System, Inc., 404 F.2d 706 (1969), cert. den. 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969), further extended the New York Times rule:

" * * * [C]onditions allegedly capable of widespreadedly affecting public health—would seem to us to be . . . of such inherent public concern and stake that there could be no possible question as to the applicability of the New York Times standard for any defeasance." 404 F.2d at 711.

A more definitive stance was taken by the Supreme Court in Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). Justice Brennan, in giving the majority opinion, stated:

"We honor the commitment to robust debate on public issues, which is embodied in the First Amendment, by extending constitutional protection to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or

anonymous." 403 U.S. at 43–44, 91 S.Ct. at 1820.

Thus, the Supreme Court has extended the original *New York Times* rule requiring actual malice demonstrated through clear and convincing proof that the defendants knowingly and deliberately published a falsehood or that the publication was made with reckless disregard whether it was false or not, from just public officials to matters of public interest or concern.

In light of *Rosenbloom,* the Ninth Circuit in Cerrito v. Time, Inc., 449 F.2d 306, again reaffirmed its position defined earlier in United Medical Laboratories, Inc.. v. Columbia Broadcasting System, Inc., *supra.* In the *Cerrito* decision, the Ninth Circuit affirmed the lower court's ruling [Cerrito v. Time, Inc., 302 F.Supp. 1071 (N.D.Cal.1969)] that the plaintiff must show with convincing clarity that malice existed, as defined in the *New York Times* case.

In examining the facts presented, the court notes that a significant portion of our population is afflicted with arthritis and consequently it is a matter of public health and legitimate public interest. Hence any treatments or cures for arthritis are also of public interest and concern. Furthermore, the court finds that the record is devoid of genuine issues of fact. The defendants have denied actual malice and have supported their contention with numerous affidavits from their researchers and editors. These documents show that diligent efforts were made on all levels to determine the source and accuracy of the statements in the articles.

Rule 12B of the Federal Rules of Civil Procedure states that if, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Since the court cannot find, on the basis of pretrial affidavits and other documentary evidence,

that plaintiffs can prove actual malice in the *Times* sense, it is disposed to grant summary judgment for the defendants. Wasserman v. Time, Inc., 138 U.S.App. D.C. 7, 424 F.2d 920 (1970), cert. den. 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970).